# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:17-cv-84-MOC
# (5:15-cr-45-MOC-DCK-1)

| | |
|---|---|
| **TODD PHILLIP RADER,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I. BACKGROUND

Petitioner was charged in the underlying criminal case with: Count (1), conspiracy to traffic in methamphetamine; Counts (2)-(5), possession with intent to distribute methamphetamine; Count (7), possession of a firearm in furtherance of a drug trafficking offense; and Count (8), possession of a firearm by a convicted felon. (5:15-cr-45, Doc. No. 1). The Government dismissed Counts (2) and (3) without prejudice. (5:15-cr-45, Doc. No. 32).

Petitioner filed a Motion to Suppress Statements and requested an evidentiary hearing, arguing that his supposed statements to police were made under the influence of heroin and methamphetamine, which rendered them involuntary. (5:15-cr-45, Doc. No. 31).

Petitioner pled guilty to Count (1) pursuant to a written plea agreement in exchange for dismissal of the remaining counts. The plea agreement provides that the statutory sentencing exposure, pursuant to 21 U.S.C. § 851, is no less than 20 years and not more than life, and at least

1

10 years of supervised release. (5:15-cr-45, Doc. No. 34 at 1-2). However, the Government agreed to withdraw the § 851 notice if Petitioner complied with the plea agreement, in which case the sentencing exposure would become no less than 10 years and no more than life imprisonment and at least five years of supervised release. (5:15-cr-45, Doc. No. 34 at 2). The agreement states that the advisory guidelines range had not yet been calculated and neither the guidelines nor the parties' recommendations or agreements with regards to sentencing would not be binding on the Court. The parties agreed to jointly recommend: the amount of a mixture and substance containing a detectable amount of methamphetamine that was known or reasonably foreseeable to Petitioner was at least 500 grams. Petitioner "admit[ted], for the purposes of this plea agreement, that the drug amount is in excess of 500 grams, but specifically denies being responsible for between 5 and 15 kilograms." (5:15-cr-45, Doc. No. 34 at 2). The United States maintained that the drug amount was between five and 15 kilograms.

By pleading guilty, Petitioner expressly waived the rights (a) to be tried by a jury; (b) to be assisted by an attorney at trial; (c) to confront and cross-examine witnesses; and (d) not to be compelled to incriminate himself. (5:15-cr-45, Doc. No. 34 at 5). The agreement contains a direct appeal and collateral review waiver except for claims of ineffective assistance of counsel or prosecutorial misconduct. (5:15-cr-45, Doc. No. 34 at 5).

Petitioner admitted that he read and understood the written Factual Basis in support of the plea, and understood that it would be used by the Court and the United States Probation Office to determine the applicable advisory guideline range and appropriate sentence, unless specifically reserved. (5:15-cr-45, Doc. No. 34 at 4). It provides, in relevant part:

> On January 28, 2015, an undercover law enforcement officer in Caldwell County conducted a controlled purchase of 6.9 grams of methamphetamine (only 22.9% purity) from Defendant Todd Phillip Radar [sic] for $400.

> On February 3, 2015, an undercover law enforcement officer in Caldwell County conducted a controlled purchase of approximately 4 grams of methamphetamine (only 27.1 % purity) from Defendant Todd Phillip Radar [sic] for $200.
>
> On February 10, 2015, law enforcement in Caldwell County conducted a controlled purchase of approximately 34.2 grams of methamphetamine (50.9% purity, for 17.4 grams of "actual" meth) from Defendant Todd Phillip Rader [sic] for $1,500.
>
> On March 2, 2015, law enforcement conducted a traffic stop of Defendant Radar [sic] and found him in possession of 21.6 grams of methamphetamine (93.3% purity, for 20.15 grams of "actual" meth) and a .22 caliber Smith & Wesson handgun. Radar [sic] has a prior felony drug conviction in 2001 for Trafficking in Lysergic Acid (a Schedule III controlled substance) (Class G felony) for which he served approximately 3 years in prison.
>
> Later on March 2, 2015, Defendant Radar [sic] provided a post-*Miranda* confession to law enforcement. (***The Defendant objects to this sentence***).

(5:15-cr-45, Doc. No. 33).

The plea hearing came before Magistrate Judge David C. Keesler. Petitioner stated under oath that he discussed the plea agreement with counsel and fully understood it, including the charge, his sentencing exposure, and the agreed drug quantity. (5:15-cr-45, Doc. No. 58 at 3-7). He discussed the U.S. Sentencing Guidelines and how they might apply to his case with counsel and understood that the sentence had not yet been determined. (5:15-cr-45, Doc. No. 58 at 8). He understood the rights he was waiving by pleading guilty, including the right to a speedy trial before a judge and jury, to summon witnesses to testify on his behalf, and to confront witnesses against him, have the assistance of counsel, be presumed innocence, and require the Government to prove his guilt beyond a reasonable doubt. (5:15-cr-45, Doc. No. 58 at 9-10). The Court advised him that, "[b]y entering this plea of guilty, you're waiving that right [to have a trial]. There's not going to be a trial. There will be **one more hearing** where the district judge will determine what sentence to impose in your case. Do you understand all that?" (5:15-cr-45, Doc. No. 58 at 10) (emphasis

added). Petitioner responded "[y]es." (5:15-cr-45, Doc. No. 59 at 10). Petitioner further stated that understood the charge of methamphetamine trafficking conspiracy, went over the charge with counsel, understood it, and is guilty of that crime. (5:15-cr-45, Doc. No. 58 at 10).

With the exception of the objections in the written Factual Proffer, Petitioner stated that he read it and agreed with it. (5:15-cr-45, Doc. No. 58 at 17). With regards to drug amount, the prosecutor explained that Petitioner agreed to the statutory threshold of 500 grams but, beyond that, the parties were reserving the right to advocate their positions with regards to whether the base offense level should be 30 or greater. (5:15-cr-45, Doc. No. 58 at 14). Petitioner agreed that nobody threatened, intimidated, or forced him to plead guilty, or promised him anything other than what is contained in the plea agreement. (5:15-cr-45, Doc. No. 17). He had enough time to discuss with his lawyer any possible defenses he might have to the charges and was satisfied with the services of his lawyers, who were "exceptional." (5:15-cr-45, Doc. No. 58 at 17).

The Presentence Investigation Report ("PSR") was calculated with the assumption that Petitioner would comply with the plea agreement and the § 851 notice would be withdraw by the Government. See (5:15-cr-45, Doc. No. 42 at ¶ 98). The PSR scored the base offense level as 34 for a violation of 21 U.S.C. § 841(a)(1) involving at least five kilograms but less than 15 kilograms of methamphetamine. (5:15-cr-45, Doc. No. 42 at ¶ 20). Two levels were added for possession of a firearm during the course of the conspiracy. (5:15-cr-45, Doc. No. 42 at ¶ 21). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 33. (5:15-cr-45, Doc. No. 42 at ¶¶ 27-29). Petitioner had 13 a criminal history score of 13 and two points were added because Petitioner committed this offense while under a criminal justice sentence, resulting in a total criminal history score of 15 and criminal history category of VI. (5:15-cr-45, Doc. No. 42 at ¶¶ 56-58). The resulting guideline imprisonment range was 235 to 293 months. (5:15-cr-45, Doc.

4

No. 42 at ¶ 96). Petitioner filed objections with regards to the drug amount. (5:15-cr-45, Doc. No. 41).

At the sentencing hearing, the Government withdrew the § 851 enhancement in accordance with the plea agreement. See (5:15-cr-45, Doc. No. 59 at 12). Petitioner confirmed that he was pleading guilty to Count (1) freely and voluntarily, that he committed that offense, and was fully satisfied with the services of counsel. (5:15-cr-45, Doc. No. 59 at 3). The Court overruled Petitioner's objection to the PSR's drug amount finding and adopted the PSR without change. (5:15-cr-45, Doc. No. 59 at 6). Petitioner addressed the Court and stated "I think my lawyer, he did a really good job…." (5:15-cr-45, Doc. No. 59 at 10). The Court sentenced Petitioner to 235 months' imprisonment followed by five years of supervised release. (5:15-cr-45, Doc. No. 48).

Appellate counsel filed a memorandum brief on direct appeal pursuant to Anders v. California, 386 U.S. 738 (1967). Petitioner filed a *pro se* brief raising the following claims, *verbatim*:

> I. Whether the United States committed Prosecutorial Misconduct by using a drug-influenced statement/ confession in whole or in part to obtain a more severe sentence under the sent[]encing guidelines and in violation of the Due Process clause guaranteed the accused through the XIV Amendment of the United States Constitution.
>
> II. Whether the use of drug-influenced statement/ confession triggered the "Fruit of the Poisonous Tree" doctrine and made the Judgment and conviction of the Defendant an Illegal Sentence requiring reversal of the conviction.

(Fourth Circuit case no. 16-4525, Doc. No. 27 at 2).

Petitioner argued in the body of the *pro se* appellate brief that counsel was deficient for abandoning the suppression motion without a hearing. (Id. at 6).

The Fourth Circuit Court of Appeals affirmed on March 15, 2017, stating "[w]e conclude that the district court did not err in relying on Rader's statement to law enforcement officials

5

detailing the quantity of drugs involved in the instant offense." United States v. Rader, 680 Fed. Appx. 238, 239 (4th Cir. 2017). With regards to Petitioner's allegations of ineffective assistance of trial counsel, the Court noted that, because the record did not conclusively establish ineffective assistance of counsel, these claims should be raised, if at all, in a § 2255 motion. Id. The Court reviewed the record and Petitioner's brief found no meritorious issues for appeal.

Petitioner filed the instant § 2255 Motion to Vacate on May 10, 2017. He argues that: (1) Counsel was ineffective for failing and/or refusing to (A) attack the legality of the waiver of rights form; (B) attack the illegally obtained statement/confession while knowing that his judgment was impaired at the time; (C) obtain a hearing on the voluntariness of the statement; and (D) argue that Petitioner's post-arrest statement was fruit of the poisonous tree; (2) use of Petitioner's illegally-obtained statement regarding drug quantity, to enhance his sentence, violated due process and the safeguards against self-incrimination; (3) counsel was ineffective for moving forward with the plea agreement which effectively abandoned Petitioner's due process rights to a suppression hearing; (4) counsel was ineffective for misadvising Petitioner that, if he pled guilty to Count (1), his guidelines range would be 100-125 months' imprisonment; (5) counsel was ineffective for failing to move to dismiss the case or negotiate a more favorable plea based on information that Petitioner told him provided that the sole witness was a previously convicted Government-employed confidential informant, with whom it was impossible for Petitioner conspire, and due to Government entrapment.

The Government argues in its Response that Petitioner's due process claim is procedurally barred and meritless, and that he waived his pre-plea claims of ineffective assistance of counsel and cannot show deficient performance or prejudice. (Doc. No. 3)

Petitioner argues in his Reply that his due process claims are not barred by the plea's appellate waiver because the plea was not knowingly and voluntarily entered, that the Fourth Circuit did not rule that the confession was voluntary, and that his claims of ineffective assistance of counsel are not barred because he discovered at sentencing that the motion to suppress had been waived and therefore he can demonstrate cause and prejudice. He argues that there is a reasonable probability that, but for counsel's and court's errors in not advising Petition before entering the plea that he would be waiving his right to a hearing on his suppression motion, that he would not have entered the plea and would have gone to trial if the suppression motion would have been denied. He seeks an evidentiary hearing to determine whether his statement to police was the result of a rational mind in light of his use of drugs at the time.

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on

7

direct appeal]"). Under the law of the case doctrine, once the decision of an appellate court establishes law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work a manifest injustice." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988)); see United States v. Francis, 62 Fed. Appx. 507 (4th Cir. 2003) (applying law of the case doctrine to bar the relitigation on § 2255 review of issues previously litigated on direct appeal).[1]

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 200

---

[1] Unpublished opinions are not ordinarily accorded precedential value, and are "entitled only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted)).

8

(4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the

prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[2]

(1) <u>Motion to Dismiss</u>

Petitioner contends that counsel was ineffective for failing to move to dismiss the case based on information that Petitioner told him, early in the case, that the "sole witness to the … case" was a previously convicted Government-employed confidential informant, with whom it was impossible for Petitioner conspire, and due to Government entrapment. (Doc. No. 1 at 8).

---

[2] Petitioner's claims have been consolidated and renumbered.

This claim is too vague and conclusory to proceed because Petitioner fails to identify the witness, proffer that individual's testimony, or allege that he or she was available and willing to testify at a trial. Nor does he allege that, but for counsel's alleged ineffective assistance, there was a reasonable probability that a motion to dismiss would have been granted. This claim is therefore too vague and conclusory to support relief. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

(2)   Voluntariness of the Plea

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). The court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3).

Magistrate Judge Keesler complied with Rule 11 by asking Petitioner, under oath, whether he understood the nature of the charges, his sentencing exposure, and the consequences of pleading guilty including the rights he was waiving by pleading guilty. Petitioner stated that he understood and specifically agreed to waive his appellate and collateral rights except for claims of prosecutorial misconduct and ineffective assistance of counsel. The plea was supported by a factual basis and Petitioner stated under oath that he was pleading guilty because he was guilty, and without threats, coercion, or promises. Petitioner further stated that he was satisfied with his

lawyers' exceptional services. Petitioner's present unsupported allegations that his plea was not knowingly and voluntarily entered are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221–22 (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary). Therefore, Petitioner's guilty plea was freely and voluntarily entered and he waived all nonjurisdictional defects.

Petitioner's specific claims that counsel's deficient performance rendered his guilty plea involuntary are meritless. His argument that counsel should have negotiated a more favorable plea based on Petitioner's information about a confidential informant and entrapment, is rejected. This claim is too vague and conclusory to support relief for the reasons set forth in Claim (1), *supra*. Moreover, any suggestion that a more favorable plea would have been forthcoming from the Government had counsel raised the issue is purely speculative. Petitioner also fails to allege that he would have gone to trial but for counsel's alleged deficiency with regards to the allegedly exculpatory witness.

Next, Petitioner contends that counsel was ineffective for misadvising or manipulating him into entering into a plea agreement without a suppression hearing, which violated due process and his right not to incriminate himself. Petitioner's suggestion that he did not know that his guilty plea would result in waiver of the suppression motion is conclusively refuted by the record. Petitioner signed a plea agreement that admitted his guilt and waived all appellate and collateral claims except for prosecutorial misconduct and ineffective assistance of counsel. Judge Keesler

specifically informed Petitioner at the Rule 11 hearing that there would only be one more hearing in the case, which would be for sentencing. Petitioner's present self-serving claims that he thought he would have a suppression hearing before sentencing, or that the issue would be preserved for appeal, are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Finally, Petitioner claims that counsel induced him to plead guilty by telling him that his guidelines range would be 100 to 125 months' imprisonment. The written plea agreement states that the sentence would be between the statutory minimum of 120 months, and maximum of life, that the advisory guidelines had not been calculated, and that the sentence would be within the Court's discretion notwithstanding the parties' recommendations, and that any estimate of the likely sentence was a prediction rather than a promise. Petitioner acknowledged that he understood his sentencing exposure under oath at the Rule 11 hearing. His present contention that counsel induced him to plead guilty by promising a sentence of between 100 and 125 months, and that he would not have pled guilty but for counsel's misadvice, is contradicted by the written plea agreement and Petitioner's statements under oath, and will be rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

(3)     Motion to Suppress

Petitioner contends that the use of his statement to police to support the drug quantity violated due process and his right against self-incrimination. He claims that, following his arrest and while under the influence and suffering withdrawal from methamphetamine and heroin, he was interrogated by police. They had him sign a rights waiver form while knowing he was under the influence of drugs, and obtained an inculpatory statement from him which was used to assess between five and 15 kilograms of methamphetamine which illegally increased his sentence.

13

As a preliminary matter, Petitioner waived his suppression motion when he entered his knowing and voluntary guilty plea which contains an express appellate and collateral review waiver. See Claim (2), *supra*.

Moreover, this claim is barred because it has already been rejected on direct appeal. Petitioner argued on direct appeal that the United States committed prosecutorial misconduct by using his drug-influenced statement to obtain a more severe sentence, which was fruit of the poisonous tree and violated due process. Petitioner's attempt to re-allege his suppression claim on collateral review is rejected. See, e.g., Stitt v. United States, 369 F.Supp.2d 679 (E.D. Va. 2005) (Fourth Circuit's finding on direct appeal that the court was not constitutionally required to give jury instruction barred petitioner from arguing on § 2255 review that counsel was ineffective for failing to request that instruction); Higgs v. United States, 711 F.Supp.2d 479 (D. Md. 2010) (Fourth Circuit's ruling in the context of a Brady[3] violation that the absence of a witness from trial and failure to provide notes pertaining to that witness had no prejudicial effect on the outcome of the case and that there was strong evidence to support the conviction and sentence even if the statement at issue had been introduced into evidence, barred petitioner from arguing on § 2255 motion that counsel was ineffective for failing to call that witness at trial).

Therefore, Petitioner's claim that the failure to suppress his statement to police, and reliance on it to enhance his sentence violated due process, has been waived and is barred from collateral review.

## IV. CONCLUSION

---

[3] Brady v. Maryland, 373 U.S. 83 (1963).

For the foregoing reasons, the Court will dismiss and deny Petitioner's § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: May 29, 2018

Max O. Cogburn Jr
United States District Judge